UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LAUREN E. GABEL,

                                    Plaintiff,                          07 Civ. 11031 (CM)
                                                                        ECF CASE
                -against-
                                                                        **FIRST AMENDED**
RICHARDS SPEARS KIBBE & ORBE LLP n/k/a                                  **COMPLAINT**
RICHARDS KIBBE & ORBE LLP, LEE S. RICHARDS III,                         **AND DEMAND**
DAVID SPEARS, LARRY G. HALPERIN, BRIAN S.                               <u>**FOR JURY TRIAL**</u>
FRASER, JONATHAN KIBBE, WILLIAM Q. ORBE,
MICHAEL D. MANN, and JOHN and JANE DOES
1 through 20,

                                    Defendants.

------------------------------------------------------------------X

            Plaintiff Lauren E. Gabel ("Plaintiff" or "Gabel"), as and for her first amended

complaint against defendants Richards Spears Kibbe & Orbe LLP n/k/a Richards Kibbe & Orbe LLP

("RSKO"), Lee S. Richards III ("Richards"), David Spears ("Spears"), Larry G. Halperin

("Halperin"), Brian S. Fraser ("Fraser"), Jonathan Kibbe ("Kibbe"), William Q. Orbe ("Orbe"),

Michael D. Mann ("Mann") and John and Jane Does 1 through 20 ("Does 1-20") (collectively,

"Defendants"), hereby alleges, upon information and belief, as follows:

<u>**Relevant Parties and Jurisdiction**</u>

            1.          Plaintiff is a natural person and a citizen of both the United States of America

and the State of New York, with a residence, as well as her principal place of abode, located in

Brooklyn, New York.  From on or about October 1, 2001 through on or about May 9, 2005, Plaintiff

was a full-time employee of Defendants, to wit, Defendants' Director of Finance and Administration.

On or about May 10, 2005, Plaintiff was discharged by Defendants.

            2.          Upon information and belief, Defendant RSKO is a limited liability

partnership authorized and existing under the laws of the State of New York with offices, as well as

its principal place of business, located at 1 World Financial Center, New York, New York 10281-

1003.  Upon information and belief, RSKO also maintains offices in Washington, D.C., and London,

2

England, and changed its name from Richards Spears Kibbe & Orbe LLP to Richards Kibbe & Orbe LLP upon the departure of Defendant Spears from the partnership, and its employ, in or about 2006.

3.     Upon information and belief, Defendant Richards is a natural person with offices, as well as his principal place of business, located at 1 World Financial Center, New York, New York 10281-1003.   At all times relevant herein, Richards was (and continues to date to be) a partner in RSKO, and at various times relevant herein was, and/or is, a member of its management and executive committees.

4.     Upon information and belief, Defendant Spears is a natural person with offices, as well as his principal place of business, located at 51 Madison Avenue, New York, New York 10010.  At all times relevant herein, Spears was a partner in RSKO, and a member of its management and executive committees.

5.     Upon information and belief, Defendant Halperin is a natural person with offices, as well as his principal place of business, located at 1 World Financial Center, New York, New York 10281-1003.  At all times relevant herein, Halperin was (and continues to date to be) a partner in RSKO, and at various times relevant herein was, and is, a member of its management and executive committees, and a trustee of the Plan, as hereinafter defined.

6.     Upon information and belief, Defendant Fraser is a natural person with offices, as well as his principal place of business, located at 1 World Financial Center, New York, New York 10281-1003.   At all times relevant herein, Fraser was (and continues to date to be) a partner in RSKO, and at various times relevant herein was, and is, a trustee of the Plan, as hereinafter defined.

7.     Upon information and belief, Defendant Kibbe is a natural person with offices, as well as his principal place of business, located at 1 World Financial Center, New York, New York 10281-1003.   At all times relevant herein, Kibbe was (and continues to date to be) a partner in RSKO, and at various times relevant herein was, and/or is, a member of its management and executive committees.

3

8.    Upon information and belief, Defendant Orbe is a natural person with offices, as well as his principal place of business, located at 1 World Financial Center, New York, New York 10281-1003.   At all times relevant herein, Orbe was (and continues to date to be) a partner in RSKO, and at various times relevant herein was, and/or is, a member of its management and executive committees.

9.    Upon information and belief, Defendant Mann is a natural person with offices, as well as his principal place of business, located at 701 8th Street N.W., Washington, D.C. 20001-3727.   At all times relevant herein, Mann was (and continues to date to be) a partner in RSKO, and at various times relevant herein was, and/or is, a member of its management and executive committees.

10.    Defendants Does 1 through 20 are or were partners, members, principals, associates, directors, officers, employees, agents, staff, successors, assigns, aiders and abettors, and/or co-conspirators of Defendants RSKO, Richards, Spears, Halperin, Fraser, Kibbe, Orbe and/or Mann in the acts, omissions, conspiracies and other wrongful conduct described herein, all of whom knew or should have known that their actions would cause legal injury to Plaintiff.  The true names and capacities of Does 1-20 are presently unknown to Plaintiff, and Plaintiff accordingly sues such Defendants by such fictitious names.  Upon discovery of their true names and capacities, Plaintiff will amend this Complaint to add said persons or other entities as additional named defendants herein.

11.    This Court has jurisdiction over the subject matter of this action, which is brought pursuant to Sections 1331 and 2201 of Title 28, United States Code, 28 U.S.C. §§ 1331 and 2201, as amended; Section 2000e of Title 42, U.S. Code ("Title VII" of the Civil Rights Acts of 1964 and 1991), 42 U.S.C. § 2000e, as amended; Sections 1001 *et seq.,* of Title 29, U.S. Code, as amended (the "Employee Retirement Income Security Act of 1974" or " ERISA"), and particularly 29 U.S.C. § 1140; Title 8, Chapter 1, of the Administrative Code of the City of New York, N.Y.C. Admin. Code § 8-101 *et seq.,* as amended, commonly known as the New York City Human Rights

4

Law (the "NYCHRL"); as well as principles of ancillary, pendent and supplemental jurisdiction.

12.     Defendants are all employers within the meaning of Section 1003(5) of ERISA, as well as within the meaning of the other laws, and the common law, under which claims are brought herein.

13.     On March 10, 2008, the U.S. Equal Employment Opportunity Commission (the "EEOC" or the "Commission") issued a Letter of Determination (the "LOD") with respect to charges of discrimination and retaliation previously interposed by Plaintiff ("Charging Party") against Defendants before the EEOC under Charge No. 160-2006-00051.   The LOD states that

> the Commission has determined there is reasonable cause to believe Charging Party and a class of female employees were subjected to discrimination in regard to the terms and conditions of their employment and subjected to an on-going hostile work environment because of their sex.  There is also reasonable cause to believe Charging Party was subjected to retaliation by Respondent for engaging in protected activities and was ultimately terminated as a result, all in violation of Title VII.

> This determination is final.

14.     On March 11, 2008, the Commission issued to Plaintiff a Notice of Right to Sue (the "NORTS") upon her charges of discrimination and retaliation against Defendants.  In the NORTS, the Commission stated, *inter alia,* that

> [t]he EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge . . . .

15.     Plaintiff has timely and properly fulfilled all statutory and/or other prerequisites, if any, to the bringing of this action, as well as each and all of the causes of action stated hereinbelow.

16.     Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b).

### Facts Giving Rise to This Action

17.     Plaintiff began her employment with Defendant RSKO on or about October 1, 2001, as Director of Finance and Administration.  She thereafter served in that position on a full-time basis, continuously until she was summarily discharged on or about May 10, 2005. October 1, 2001 through May 10, 2005 is hereinafter referred to as the "Relevant Period".

5

## The Hostile Work Environment Created and Maintained By Defendants

18.    While employed by Defendant RSKO, Plaintiff experienced, observed or was otherwise made aware of a variety of unlawful, discriminatory, retaliatory and/or otherwise actionable misconduct.  On one occasion, two male attorneys (one partner, one associate) working at a client's office called a female legal assistant and directed her to immediately go buy them cookies and deliver the cookies to them where they were working.  A male legal assistant was with them at the time, but he was not asked to purchase the cookies.

19.    On another occasion, a female associate attorney announced that she was getting married and was planning to start a family.  Shortly thereafter, her previously positive year-end performance evaluations became harsh and negative, and she was informed that she was no longer "on partnership track".  She was then effectively discharged, being told to find another job, and being given only until the end of the calendar year to do so.

20.    While employed by RSKO, Plaintiff also became aware that a female associate attorney had asked to leave the office daily at 6:00 p.m., to be with her toddler son at dinnertime, but that her request had been denied.  Contemporaneously, though, male associates were regularly being allowed to leave the firm at or around the same time of day, to go to a health club to work out.

21.    Also during the Relevant Period, a female legal assistant was fired for mis-filing papers, even though other, male legal assistants who had made similar mistakes were permitted to keep their jobs.

22.    Notwithstanding Defendants having a policy providing for three (3) month maternity leaves, at least three (3) female associate attorneys who took such leaves during the Relevant Period had their year-end bonuses substantially reduced for doing so.  Their subsequent complaints about such reductions were summarily rejected.  No male associate has ever had a year-end bonus reduced for taking a leave of any kind.

23.    Also during the Relevant Period, several male partners promised a female

6

attorney that she would be given opportunities to do more substantive work when she changed her status from temporary attorney to full-time associate. After she did so, however, she was never provided those opportunities. Under similar circumstances, however, men who had converted from temporary to full-time associate were given such opportunities.

24.    In the course of a business-related conversation on yet another occasion during the Relevant Period, a senior male member of the firm asked Plaintiff, "Don't you just love things well-hung?"

25.    In at least one weekly meeting of several male partners and the female recruiting coordinator during the Relevant Period, a male partner referred to a female associate attorney candidate as a "typical dumb blonde". The recruiting coordinator complained, and was thereafter excluded from those meetings.

26.    On another occasion, a male partner used profanity to his female secretary, both verbally and in e-mails, in violation of Defendants' express policy. The secretary complained, but no action was taken against, nor was there even any admonition given to, the male partner. To the contrary, another more senior male partner suggested that, instead, the secretary should be fired for having made the complaint.

27.    RSKO's tolerance of such a hostile and abusive work environment also led yet another male partner to publicly and repeatedly verbally abuse his female secretary, including regularly belittling and screaming at her in front of other staff, with impunity. No male staff member at any level was ever subjected to similar abuse.

28.    Also during the Relevant Period, during a weekly conference call with one of the firm's clients, a newly-married female associate attorney was asked by the client what her married name was. The male RSKO partner on the call interrupted before she could answer, and gave his own last name as her married name, embarrassing her in front of the client, and then laughing.

29.    On another occasion, a male partner insisted that a 7½-month-pregnant female

staff member immediately come to his office to pick up papers, rejecting her request that, due to her condition, he simply send them to her through inter-office mail.  When, with considerable difficulty, she did so, the male partner was nowhere to be found, having already left the office, and having merely tossed the supposedly urgent materials on his secretary's desk for the female staff member to find.

30.    The firm's male comptroller, who reported to Plaintiff, regularly argued with, was dismissive of, and was insubordinate toward her.  Plaintiff detailed the comptroller's improper conduct in writing to Defendants, but they did nothing.  Rather, they admonished *Plaintiff* to "work on getting along with [the comptroller] more".  No similar conduct would ever have been tolerated, nor would any similar admonition have been given, had Plaintiff not been a woman.

31.    During the Relevant Period, Defendants received one or more other complaints from female employees of sexually harassive and/or otherwise inappropriate conduct by male employees and/or male applicants for employment.  Instead of discharging the offending employee, disqualifying the offending applicant, or otherwise addressing the issue with them, Defendants instead persecuted the female victims of the sexually harassive and/or otherwise inappropriate conduct, or directed said victims to alter their own conduct as if said victims, rather than the offending employees or applicants, were the ones responsible for the matters being complained of.

32.    Throughout the Relevant Period, and notwithstanding roughly equal numbers of male and female associate candidates, Defendants consistently hired more males to work as attorneys at the firm.  As recently as 2006, for example, twelve (12) new attorneys were hired, only two (2) of whom were female.

33.    Defendants have also created, and permitted to develop and continue, a culture in which female associates are not considered able to lead the department's junior associates of either gender.  Notwithstanding several mid-to-senior female associates who have performed well in their jobs, none were, or are, considered "leaders" among the department's senior associates.  Rather,

8

Defendants continue to refer to, treat, and assign leadership responsibilities principally to men.

**Plaintiff's Complaints and Other Notices**
**to Defendants, and Defendants' Retaliation Against Her for Them**

34.    Part of Plaintiff's job while employed by Defendants was to see that Defendants' anti-discrimination policy was properly observed and implemented.  When she did so, however, Defendants failed to support her.  They also repeatedly criticized and berated her, either for not taking action against the complaining employee (rather than the offending attorney), or for otherwise failing to somehow "make the complaint go away".  Over time, Defendants also began retaliating against Plaintiff herself for doing or, more accurately, trying to do this part of her job, and ultimately fired her as part of that retaliation.

35.    In early 2004, prior to the firm's dismissal of its female human resources coordinator, Plaintiff pointed out that there was no documentation which would support dismissing her.  The partners thereupon directed Plaintiff to "create" such documentation, and otherwise to manufacture "support" for a business basis for the dismissal, even if based upon uncorroborated rumors or hearsay, or even nothing at all.  When Plaintiff objected, and pointed out that this violated Defendants' own policy, Plaintiff was advised to disregard the policy and follow Defendants' instructions instead.  Subsequently, the coordinator brought a discrimination claim of her own against Defendants, and Defendants thereafter treated Plaintiff as if she (Plaintiff) were to blame for it.  Defendants also blamed Plaintiff for the fact that they had no legitimate business basis defense for their actions against the coordinator.

36.    Thereafter, each time Plaintiff pressed for adherence to Defendants' policy (and, indeed, the law), she was chastised as not being a "team player", or something similar.  Over time, Defendants also began to exclude Plaintiff from more and more of their various committee meetings.  Prior to such action, Plaintiff had either attended or been an actual member of Defendants' Human Resources Committee, Audit & Finance Committee, and Management Committee. Defendants also otherwise made Plaintiff feel that she had done something wrong simply because she sought to "do the right thing" with respect to Defendants' policy, and the law.

9

37.     On one occasion, after conducting a proper investigation, Plaintiff was chastised for "siding" with a legal assistant, and not "supporting" several of the lawyers involved in an office dispute.  Plaintiff had merely tried to maintain her neutrality in the matter, but was nevertheless threatened with being terminated for doing so.  Defendants' recruiting coordinator – Plaintiff's deputy – was also threatened with termination, because she (the recruiting coordinator) had continued to handle the matter during Plaintiff's vacation absence.  Indeed, Defendants told Plaintiff that it was her job to convince Defendants' employees that, regardless of how inappropriate it might be, *any* request of a partner was to be honored.

38.     On another occasion, in 2004, Plaintiff brought a male partner's inappropriate conduct toward a secretary to the attention of the firm's Management Committee.  Rather than disciplining the partner, however, Defendants not only took no action against him whatsoever, a more senior male partner suggested to Plaintiff that the secretary be fired for having complained.  When Plaintiff refused to discharge the secretary, the partner ceased any further contact or communication with Plaintiff.  Such refusal to communicate thereafter continued for the balance of Plaintiff's term of employment.

39.     On or about December 22, 2004, in the course of advising employees of their year-end bonuses, Defendants gave Plaintiff the first negative review she had ever received, cut her bonus by almost 25% from what it had previously been and, also for the first time during the Relevant Period, gave Plaintiff no salary increase whatsoever for the coming year.

40.     Defendants thereafter also excluded Plaintiff from several significant firm administrative matters.  Among these were Defendants' plans to open a London office, a matter in which Plaintiff would otherwise not only have been involved, but would have had a leadership role. In so doing, Defendants yet further demeaned Plaintiff, diminished her and her job status, and otherwise acted adversely toward her.  Upon information and belief, Defendants did so because Plaintiff would neither tolerate Defendants' hostile environment toward women, either personally or when it was visited upon her female colleagues, nor ignore, suppress or retaliate for the

10

complaints of such mistreatment by such other female employees.

41.     Defendants' diminution and disparagement of Plaintiff continued virtually uninterrupted thereafter.  Defendants even sent Plaintiff home on May 6, 2005 – while she was still employed – and thereupon barred her from returning to its office premises, or even the building in which its New York offices were located (1 World Financial Center).  They did so even though they had, at that time, proposed that Plaintiff depart their employ "amicably", and proposed terms upon which they hoped she would agree to do so.  Such terms principally involved a payment by Defendants to Plaintiff, denoted as "severance", in exchange for Plaintiff's agreement, among other things, to: (I) keep confidential all information of which she was aware regarding conduct such as is described hereinabove; (ii) furnish to Defendants a general release of all claims she had against Defendants, including of discrimination and retaliation under Title VII and analogous state and local law; and (iii) agree not to voluntarily participate in the pursuit of any similar claims by any of Defendants' other then-present, or former, employees.

42.     A few days later, on May 10, 2005, Defendants terminated Plaintiff's employment altogether.  Plaintiff was given no severance at, or at any time after, her termination, even though Defendants had routinely paid severance to departing male employees.  Defendants also terminated Plaintiff just before she vested in substantially more of her retirement benefits under Defendants' retirement plan (the "Plan").  In particular, Plaintiff was forty percent (40%) vested at the time of her termination, and would have, in or about July, 2005, vested in an additional twenty percent (20%) of such benefits, and thus been sixty percent (60%) vested.  Upon information and belief, Defendants timed their termination of Plaintiff's employment so as to prevent her from vesting in this additional twenty percent (20%).  Notably, Defendants Halperin and Fraser were, at that time (and, upon information and belief, still are) trustees of the Plan.

43.     By their various wrongful actions, omissions, failures and refusals, including but not necessarily limited to those outlined hereinabove, Defendants created, tolerated, promoted and perpetuated a work environment that was hostile toward Plaintiff and other female employees

on the basis of their gender. Defendants also retaliated and took reprisals against Plaintiff, including terminating her employment, for her various protected activities herein – complaining of such improper conduct, attempting to properly address similar complaints by others, bringing such complaints to Defendants' attention, and pressing for such complaints to be handled and resolved appropriately.

### AS AND FOR A FIRST CAUSE OF ACTION
(Discriminatory Conduct in Violation of 42 U.S.C. § 2000e-2(a)(1))
(Against Defendant RSKO only)

44.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 43 hereof as if fully set forth at length.

45.    One or more of Defendants' various wrongful acts, omissions, failures and refusals to act, as described hereinabove, or otherwise, were taken against Plaintiff on the basis of her gender, and constituted discrimination against her on the basis thereof with respect to her compensation, terms, conditions and privileges of employment, in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, and particularly 42 U.S.C. § 2000e-2(a)(1).

46.    As a result of said conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $4,000,000.

### AS AND FOR A SECOND CAUSE OF ACTION
(Discriminatory Conduct in Violation of 42 U.S.C. § 2000e-2(a)(2))
(Against Defendant RSKO only)

47.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 46 hereof as if fully set forth at length.

48.    One or more of Defendants' various wrongful acts, omissions, failures and refusals to act, as described hereinabove, or otherwise, were taken against Plaintiff on the basis of her gender, and constituted discrimination against her on the basis thereof with respect to her compensation, terms, conditions and privileges of employment, in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, and particularly 42 U.S.C. § 2000e-2(a)(2).

49.    As a result of said conduct, Plaintiff has been damaged in an amount to be

12

determined at trial, but in no case less than $4,000,000.

### AS AND FOR A THIRD CAUSE OF ACTION
(Discriminatory Conduct in Violation of 42 U.S.C. § 2000e-3(a))
(Against Defendant RSKO only)

50.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 49 hereof as if fully set forth at length.

51.     One or more of Defendants' various wrongful acts, omissions, failures and refusals to act, as described hereinabove, or otherwise, were taken in retaliation and/or as reprisal for Plaintiff's opposition and/or objection to Defendants' various unlawful employment practices and/or conduct.  Said practices and/or conduct accordingly constituted violations of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, and particularly 42 U.S.C. § 2000e-3(a).

52.     As a result of said conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $4,000,000.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Unlawful Discharge, Discrimination and Interference, in Violation of 29 U.S.C. § 1140)
(Against All Defendants)

53.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 52 hereof as if more fully set forth at length.

54.     Defendants, and in particular (although not only) Defendants Halperin and Fraser, terminated Plaintiff's employment when they did so, in whole or in part, so as to prevent her from further vesting in rights, benefits and entitlements under the Plan. Plaintiff was thereby denied monies, benefits and/or other things of value which she would otherwise have received, and/or to which she would otherwise have been or become entitled.  But for Defendants' various wrongful acts, omissions, failures and refusals to act as described hereinabove, or otherwise, including said termination, Plaintiff would have received and/or been or become entitled to such monies, benefits and/or other things of value.

55.     By said termination, Defendants discriminated against Plaintiff with respect to the vesting of employee, and particularly retirement, benefits under an employee benefit plan

13

governed by ERISA, to wit, the Plan, in violation particularly of Section 510 of ERISA (29 U.S.C. § 1140). Said termination was effected by Defendants, in part or in whole, to interfere with Plaintiff's attainment of one or more such rights, benefits and/or entitlements, all of which, but for Defendants' wrongful conduct, Plaintiff would have earned, become entitled to and vested in.

56.     As a result of said wrongful acts and conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $ 4,000,000.

**AS AND FOR A FIFTH CAUSE OF ACTION**
(Discriminatory Conduct in Violation of N.Y.C. Admin. Code § 8-107.1(a))
(Against Defendant RSKO)

57.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 56 hereof as if more fully set forth at length.

58.     Defendants' various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, were taken against Plaintiff on the basis of her gender, and constituted discrimination against her with respect to her compensation, terms, conditions, and privileges of employment on the basis thereof, in violation of the Administrative Code of the City of New York, and particularly Section 8-107.1(a) thereof.

59.     As a result of said conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $4,000,000.

**AS AND FOR A SIXTH CAUSE OF ACTION**
(Unlawful Discrimination and Retaliation in Violation of N.Y.C. Admin. Code § 8-107.7)
(Against Defendant RSKO)

60.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 59 hereof as if more fully set forth at length.

61.     Defendants' various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, including, but not limited to, their discharge of Plaintiff, as well as the other adverse actions taken against her for objecting to and/or opposing their various actions and practices which were in violation of the Administrative Code of the City of New York, constituted unlawful retaliation against Plaintiff in violation of said Administrative Code, and

14

particularly Section 8-107.7 thereof.

62.    As a result of said conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $4,000,000.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Aiding and Abetting Discriminatory Conduct in Violation of
N.Y.C. Admin. Code § 8-107.6)
(Against All Defendants Except RSKO)

63.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 62 hereof as if more fully set forth at length.

64.    By their various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, Defendants Richards, Spears, Halperin, Fraser, Kibbe, Orbe, Mann and John and Jane Does 1 through 20, aided and abetted, or attempted to aid and abet, the doing of various acts forbidden by the Administrative Code of the City of New York, and in particular, in violation of Section 8-107.6 thereof.

65.    As a result of said conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $4,000,000.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
(Breach of Contract)
(Against All Defendants)

66.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 65 hereof as if more fully set forth at length.

67.    By virtue of their various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, Defendants breached their employment agreement with Plaintiff.

68.    As a result of said conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $4,000,000.

## AS AND FOR A NINTH CAUSE OF ACTION
(Intentional Infliction of Emotional Distress)
(Against All Defendants)

69.    Plaintiff repeats, reiterates and realleges each and every allegation contained

15

in paragraphs 1 through 68 hereof as if more fully set forth at length.

70.    By their various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, Defendants intended to cause Plaintiff emotional distress, mental anguish, and other mental, psychological and emotional harm, and did so.

71.    As a result of said conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $4,000,000.

### AS AND FOR A TENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)
(Against All Defendants)

72.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 71 hereof as if more fully set forth at length.

73.    Defendants knew, or had reason to or should have known, that by their various wrongful acts, omissions, failures and refusals to act, as described or referred to hereinabove, or otherwise, Plaintiff would be caused emotional distress, mental anguish, and other mental, psychological and emotional harm.

74.    Notwithstanding such actual knowledge and/or reason to know, Defendants acted in reckless and/or negligent disregard for the duty they owed to Plaintiff to exercise reasonable care not to cause such harm, and as a result, Plaintiff was caused such emotional distress, mental anguish, and other mental, psychological and emotional harm.

75.    As a result of said wrongful acts and conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $ 4,000,000.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
(Breach of Fiduciary Duty)
(Against All Defendants)

76.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 75 hereof as if more fully set forth at length.

77.    Defendants, and each of them, but particularly Defendants Halperin and Fraser, were fiduciaries of, and to, Plaintiff with respect to the Plan, including as trustees and/or

16

administrators thereof.

78.    Defendants, and in particular (although not only) Defendants Halperin and Fraser, terminated Plaintiff's employment when they did so, in whole or in part, so as to prevent her from further vesting in rights, benefits and entitlements under the Plan.  Plaintiff was thereby denied monies, benefits and/or other things of value which she would otherwise have received, and/or to which she would otherwise have been or become entitled.  But for Defendants' various wrongful acts, omissions, failures and refusals to act as described hereinabove, or otherwise, including said termination, Plaintiff would have received and/or been or become entitled to such monies, benefits and/or other things of value.

79.    Said termination was effected by Defendants, in part or in whole, to interfere with Plaintiff's attainment of one or more such rights, benefits and/or entitlements, all of which, but for Defendants' wrongful conduct, Plaintiff would have earned, become entitled to and vested in. By said termination, Defendants discriminated against Plaintiff with respect to the vesting of employee, and particularly retirement, benefits under the Plan, and breached their fiduciary duty to Plaintiff with respect thereto.

80.    Defendants' aforementioned conduct was knowing, wilful, intentional and deliberate, and was engaged in in reckless disregard for Plaintiff's rights and entitlements, as well as for the fiduciary duty owed by Defendants to Plaintiff.

81.    As a result of Defendants' wrongful acts and conduct, Plaintiff has been damaged in an amount to be determined at trial, but in no case less than $ 4,000,000.

**WHEREFORE,** Plaintiff demands judgment in her favor, and against Defendants, and each of them, upon each of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Causes of Action herein:

    a.    declaring Defendants, and each of them, jointly and severally, to have unlawfully discriminated against Plaintiff on the basis of gender by their various wrongful acts described or referred to herein, in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, including but not necessarily limited to 42 U.S.C. §§

17

2000e-2(a)(1) and 2(a)(2);

b.    declaring Defendants, and each of them, jointly and severally, to have unlawfully discharged and discriminated against Plaintiff, and to have unlawfully interfered with Plaintiff's attainment of one or more of her rights, benefits and/or entitlements under the Plan, in violation of ERISA, including but not necessarily limited to 29 U.S.C. § 1140, and to have breached the fiduciary duty they owed to Plaintiff with respect to the Plan;

c.    declaring Defendants, and each of them, jointly and severally, to have unlawfully discriminated against Plaintiff on the basis of gender by their various wrongful acts described or referred to herein, in violation of the N.Y.C. Admin. Code, including but not necessarily limited to §§ 8-107.1(a), 8-107.6 and 8-107.7 thereof;

d.    declaring Defendants, and each of them, jointly and severally, to have unlawfully retaliated against Plaintiff by their various wrongful acts described or referred to herein, in violation of Title VII of the Civil Rights Acts of 1964 and 1991, as amended, including but not necessarily limited to 42 U.S.C. §§ 2000e-3(a);

e.    declaring Defendants, and each of them, jointly and severally, to have unlawfully retaliated against Plaintiff by their various wrongful acts described or referred to herein, in violation of the N.Y.C. Admin. Code, including but not necessarily limited to § 8-107.7;

f.    declaring Defendants Richards, Spears, Halperin, Fraser, Kibbe, Orbe, Mann and John and Jane Does 1 through 20 to have unlawfully aided and abetted in the unlawful discrimination and retaliation against Plaintiff by their various wrongful acts described or referred to herein, in violation of the N.Y.C. Admin. Code, including but not necessarily limited to § 8-107.6;

g.    permanently enjoining Defendants, and each of them, jointly and severally, from continuing, or hereafter engaging in, the discriminatory and/or retaliatory practices described or referred to herein, either with respect to Plaintiff or any other current or future employee of Defendants, or any of them;

h.    directing Defendants, and each of them, jointly and severally, to reinstate Plaintiff to her former status, with all of the rights, privileges, benefits and perquisites appurtenant thereto, and to not retaliate against her with respect to her filing of either her EEOC Charge or the instant action, or for engaging in any of her other protected conduct described or referred to herein or, in the alternative, awarding her front pay in lieu thereof;

i.    awarding back pay, back bonuses, back pension and related retirement contributions and benefits, and all of the other compensation and other remuneration Plaintiff would and should have received had Defendants, and each of them, jointly and

18

severally, not unlawfully discriminated and retaliated against her, including interest from the date of Defendants' first wrongful acts, through and including the date of full payment to Plaintiff of all such amounts, in amounts to be determined at trial;

j.      awarding actual and consequential damages in favor of Plaintiff, and against Defendants, and each of them, jointly and severally, upon each and every one of the claims and causes of action herein, in amounts to be determined at trial, but in no case less than $44,000,000;

k.      awarding an additional amount equal to the maximum amount available under applicable law in favor of Plaintiff, and against Defendants, and each of them, jointly and severally, as liquidated damages, but in no case less than $4,000,000;

l.      awarding punitive damages in favor of Plaintiff, and against Defendants, and each of them, jointly and severally, in at least the amount of $44,000,000;

m.      awarding Plaintiff all of her costs, disbursements, and attorneys' fees incurred in the prosecution of the EEOC Charge, and this action; and

n.      awarding all such other and further relief in favor of Plaintiff and against Defendants, and each of them, as this Court may deem just and proper and/or which may be otherwise available to Plaintiff under applicable law or rule.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury upon each and every one of the causes of action asserted herein, and otherwise, with respect to which a trial by jury may be had.

Dated: New York, New York
       March 19, 2008

                                ERIC M. NELSON (EN-4307)
                                Attorney at Law


                                _____\s_____
                                112 Madison Avenue, Sixth Floor
                                New York, New York  10016
                                (212) 354-3666
                                Attorney for Plaintiff